**Lou Anne HOFFMAN, Appellant,**

v.

**Chauncey F. HOFFMAN, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 6, 2000.
Filed Nov. 9, 2000.

Stephen D. Marriner, Washington, for appellant.

Robert N. Clarke, Washington, for appellee.

Before McEWEN, President Judge, CAVANAUGH, KELLY, POPOVICH, HUDOCK, FORD ELLIOTT, JOYCE, MUSMANNO, and LALLY–GREEN, JJ.

JOYCE, J.:

¶ 1 This is an appeal from the final order of the trial court which dismissed the exceptions filed by Appellant, Lou Anne Hoffman, and directed Appellee, Chauncey Hoffman, to pay $150.00 per month in child support. For the reasons set forth below, we vacate and remand for further proceedings. Before addressing Appellant's claims, we will recount the facts of this case.

¶ 2 The parties met in Hawaii in 1986, when Appellee was employed as an admiral in the United States Navy. Appellee was thereafter transferred to Washington, D.C. Appellant accompanied Appellee and the parties resided together. Upon Appellee's retirement from the service in 1988, the parties moved to Washington, Pennsylvania. They married in 1990. One child, a daughter, was born in 1991.

¶ 3 In April of 1998, Appellee discovered that Appellant had engaged in an adulterous affair with one of his relatives. Appellant thereafter went to Florida for a vacation. During Appellant's absence, Appellee filed a complaint for custody of the parties' minor child.

¶ 4 The parties tried to reconcile upon Appellant's return to Pennsylvania. However, Appellee curtailed Appellant's access to monies during this time period and refused to withdraw his custody complaint. Consequently, Appellant filed a support complaint on May 27, 1998. The reconciliation proved unsuccessful. Appellant left the marital residence in August of 1998.

¶ 5 Following a hearing, the hearing officer determined that Appellant was not en-

titled to spousal support due to her prior infidelity. The hearing officer also calculated Appellee's child support obligation to be $150.00 per month. An interim order was entered; both parties filed exceptions. The trial court denied the exceptions and entered the final order directing Appellee to pay $150.00 per month in child support. Appellant timely appealed.

¶ 6 This matter was originally assigned to a panel of this Court for disposition. A majority of the panel of this Court vacated and remanded, with one judge dissenting. This Court subsequently granted a petition for reargument *en banc.* Having received the parties' supplemental briefs, the matter is now ripe for disposition. Appellant presents the following issues for review:[1] (1) whether the trial court erred in concluding that Appellee had not condoned Appellant's prior infidelity and, hence, erred in denying Appellant's request for spousal support; and (2) whether the trial court erred in calculating the parties' net monthly incomes for purposes of determining child support.

¶ 7 Appellant's first challenge concerns the denial of her request for spousal support. However, although neither of the parties has addressed the issue of jurisdiction, we must first ascertain whether this claim is properly before us for review. *See Leister v. Leister,* 453 Pa.Super. 576, 684 A.2d 192, 193 (1996) (*en banc* ) (providing that this Court may address the appealability of a spousal support order *sua sponte,* as it relates to the jurisdiction of the Court).

¶ 8 This Court has recognized that matters pertaining to spousal support are interlocutory and unappealable prior to the entry of a divorce decree. *Caplan v. Caplan,* 713 A.2d 674, 675–676 n. 1 (Pa.Super.1998); *Hrinkevich v. Hrinkevich,* 450 Pa.Super. 405, 676 A.2d 237, 239–240 (1996). This Court has extended this prin-

ciple to spousal support orders entered in response to a support complaint where there is a divorce action pending. *Leister v. Leister,* 684 A.2d at 193–195. Moreover, the holdings in the above cases have been applied even where spousal support has been denied. *Shellhamer v. Shellhamer,* 455 Pa.Super. 526, 688 A.2d 1219, 1221–1222 (1997). However, a spousal support order is appealable where no divorce action was pending at the time the support order was entered. *Hasson v. Hasson,* 696 A.2d 221, 222 (Pa.Super.1997).

¶ 9 The certified record submitted to this Court does not indicate that a companion divorce action or divorce complaint was pending at the time the instant order was entered. In fact, Appellee concedes that no divorce action had been commenced as of the date he filed his brief. Appellee's Brief at 10. We may thus review matters pertaining to the denial of Appellant's request for spousal support. *Hasson, supra.*

¶ 10 In spousal support matters, our scope of review is limited. *McKolanis v. McKolanis,* 435 Pa.Super. 103, 644 A.2d 1256, 1257 (1994). "We may reverse a support order only where the order cannot be sustained on any valid ground. Absent an abuse of discretion or insufficient evidence to sustain the support order, this [C]ourt will not interfere with the broad discretion afforded the trial court." *Id.*

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or [the judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. We emphasize that an abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness,

---

1. The record reflects that after initiating this appeal, Appellant filed a petition for modification of the child support order. A hearing on

the petition was scheduled, but was later postponed. The record does not reflect the disposition of this petition.

or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous.

*Paden v. Baker Concrete Construction Co., Inc.,* 540 Pa. 409, 412, 658 A.2d 341, 343 (1995) (citations and quotation marks omitted). *Accord McKolanis, supra.* Where there is insufficient evidence to support the trial court's order, the judgment is manifestly unreasonable and must be reversed. *McKolanis, supra.* Moreover, the assessment of the credibility of witnesses is within the sole province of the trial court. *Id.* We will review the decision of the trial court with these considerations in mind.

■ ¶ 11 With regard to the issue of spousal support, the rule is that "[a] dependent spouse is entitled to support until it is proven that the conduct of the dependent spouse constitutes grounds for a fault divorce. The party seeking to nullify the obligation bears the burden of proving the conduct claimed by clear and convincing evidence." *Crawford v. Crawford,* 429 Pa.Super. 540, 633 A.2d 155, 159 (1993). Adultery is among the enumerated grounds for a divorce on fault grounds. 23 Pa.C.S.A. § 3301(a)(2).

¶ 12 In this case, it was undisputed that Appellant had engaged in adulterous behavior. N.T. Hearing, 8/31/98, at 13–14, 21–22 and 43. However, Appellant asserts that the parties' reconciliation attempt constituted a condonation of the conduct. Appellant's Brief at 7–10. Condonation is a defense to adultery. 23 Pa.C.S.A. § 3307(b)(2).

■ ¶ 13 The defense of condonation has been defined as "complete renewal of the marital relationship, or a single act of sexual intercourse, after knowledge or belief that adultery had been committed." *Commonwealth ex rel. D'Andrea v. D'Andrea,* 262 Pa.Super. 302, 396 A.2d 765, 768 (1978). "Condonation means the blotting out of the offense imputed, so as to restore the offending party to the same position he or she occupied before the offense was committed.... Condonation restores equality before the law." *Talley v. Talley,* 215 Pa. 281, 285–286, 64 A. 523, 524 (1906) (citations omitted).

¶ 14 The parties admittedly attempted a reconciliation, N.T. Hearing, 8/31/98, at 14–15, 25 and 43, although Appellee explained that he doubted Appellant's sincerity. *Id.* at 43. The parties also conceded that they resumed their marital relations during this time period. *Id.* at 15 and 50. Notwithstanding the attempted reconciliation and resumption of intimacies, Appellee refused to withdraw the custody complaint. *Id.* at 15–16 and 45. The record also reflects that Appellee continued to limit Appellant's access to money, thus prompting her to file a complaint for spousal and child support. *Id.* at 16, 23–24 and 44–45.

¶ 15 In rejecting Appellant's claim of spousal support, the trial court simply accepted the hearing officer's determination that the parties had not effectuated a reconciliation. Trial Court Opinion, filed 6/4/99, at 2. The trial court did not address the pertinent caselaw regarding condonation. Moreover, the trial court ignored the undisputed testimony of the parties regarding their resumption of marital relations following the discovery of Appellant's infidelity.

■ ¶ 16 We recognize there was not a complete renewal of the marital relationship, as evidenced by Appellee's refusal to withdraw the custody action and Appellee's curtailment of Appellant's finances. However, while the parties were unable to achieve a complete reconciliation, the evidence nonetheless establishes that Appellee condoned Appellant's infidelity. Appellee accepted Appellant back into the marital residence and resumed relations with her. He further began courting her in an attempt to restore the parties' relationship. N.T. Hearing, 8/31/98, at 15 and 43. Appellee's conduct thus evinced an intent to forgive or condone Appellant's prior adulterous behavior. It is only logical to conclude that had the parties' attempted reconciliation been successful, this

██ would not now be before this Court.

██ ¶ 17 It is the policy of the courts to promote reconciliation and keep families together whenever possible. It may seem a harsh result that a single act of intercourse would equate to condonation of the adulterous conduct. *See D'Andrea, supra.* However, this Court must have an objective and conclusive test to utilize in determining whether condonation has occurred. Once one party to the marriage has knowledge of the other party's adultery, which is a very serious issue in a marital relationship, then that party must decide whether he or she thinks the marriage can be saved. Once that party decides to attempt to reconcile with the adulterous spouse, he or she may decide to resume sexual relations. The resumption of sexual intercourse in this situation is an objective standard by which to judge the condonation of that behavior by the other spouse. The surrounding circumstances, such as the state of mind of that spouse, are subjective and cannot be accurately gauged. To find otherwise would require this Court to engage in a subjective review of the parties' marital relationship.

¶ 18 Under these circumstances, we are compelled to conclude that the trial court abused its discretion in denying Appellant's request for spousal support. We find it illogical to apply the defense of condonation in a divorce action and then not to apply it in a support action. Condonation "means the blotting out of the offense imputed, so as to restore the offending party to the same position he or she occupied before the offense was committed." *See Talley, supra.* Allowing condonation as a defense in a divorce matter and then not allowing it in a support matter would certainly not "restore equality before the law." *Id.* We therefore reverse that portion of the trial court's order dealing with the denial of spousal support and remand for a calculation of Appellee's spousal support obligation.[2]

██ ¶ 19 In conjunction with the above claim, Appellee further asserts that Appellant is not entitled to spousal support because she voluntarily left the marital residence. Appellee's Brief at 14–16. We agree with Appellee that a voluntary withdrawal by a spouse without adequate legal reason defeats his or her right to support. *McKolanis,* 644 A.2d at 1257. However, it is undisputed that Appellant filed her support complaint while she still resided with Appellee. N.T. Hearing, 8/31/98, at 16, 23 and 44. Appellant thus had not withdrawn from the marital residence so as to defeat her right to support.

██ ¶ 20 Moreover, the rule only applies where the withdrawal is nonconsensual. *McKolanis, supra.* Although it is unclear from the record, it appears that Appellee consented to Appellant's withdrawal here. N.T. Hearing, 8/31/98, at 17. To the extent Appellee consented to Appellant's withdrawal from the marital domicile, Appellant would not be precluded from obtaining spousal support. *McKolanis, supra.* Assuming, purely for the purpose of this discussion, that the subsequent withdrawal was indeed nonconsensual, Appellant had sufficient legal cause for doing so.

> The phrase adequate legal cause for leaving is not subject to exact definition. It must be interpreted on the facts of each case. A spouse who over a period of time suffers psychological oppression may be harmed as much as a spouse

---

2. In conjunction with this claim, Appellant suggests that the obligation should be made retroactive to the filing of the complaint. Appellant's Brief at 12. Support awards are generally effective from the date of the filing of the complaint, Pa.R.C.P. 1910.17(a), unless otherwise ordered. In this case, the record demonstrates that Appellee paid for virtually all of the household expenses until Appellant left the marital residence in August. N.T. Hearing, 8/31/98 at 23 and 27. Because Appellant was supported until she left the marital residence, she is only entitled to spousal support retroactive to August 27, 1998 rather than the date on which she filed the complaint.

who over a period of time suffers physical injury. The law must recognize this harm and not force the oppressed spouse to remain in the unhappy environment in order to be entitled to support. On the other hand, the law should not impose on a spouse the duty of support where his or her mate departs the marital residence maliciously or casually on a whim or caprice.

*McKolanis,* 644 A.2d at 1258 (citations omitted).

¶ 21 As previously noted, Appellant filed her support complaint while she still resided with Appellee. N.T. Hearing, 8/31/98, at 16, 23 and 44. Appellant was prompted to seek support due to the fact that Appellee severely curtailed her access to money. *Id.* at 16 and 23. Given these circumstances, and Appellee's intent to pursue the custody action, *id.* at 16, it appears that Appellant's departure from the marital residence was prompted by the disintegration of the parties' relationship and the burdensome conditions imposed by Appellee rather than a malicious whim or caprice. Accordingly, we do not believe her departure defeats her entitlement to spousal support.

■■■■ ¶ 22 Appellant next contests the trial court's calculation of the parties' incomes with regard to the order of child support. In reviewing child support matters, the appellate court must apply an abuse of discretion standard. *Ball v. Minnick,* 538 Pa. 441, 448–449, 648 A.2d 1192, 1196 (1994). A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support or abused its discretion in applying these rules. *Id.*

■■■■ ¶ 23 With regard to Appellee's income, Appellant suggests that Appellee ought to be imputed with an earning capacity rather than his actual earnings. Appellant's Brief at 10–11. The record reveals that at the time of the hearing, Appellee was a sixty-seven year old man who had diabetes, elevated cholesterol levels and had undergone quadruple heart bypass surgery. N.T. Hearing, 8/31/98, at 30, 31, 40 and 51. Moreover, Appellee had not received any offers of employment since he retired from the Navy and relocated to Washington, Pennsylvania. *Id.* at 30. Given Appellee's particular circumstances, it is unlikely that he could secure meaningful employment commensurate with his experience as a naval officer. We thus are not persuaded that the trial court abused its discretion by utilizing Appellee's actual earnings rather than imputing an additional earning capacity to Appellee.

¶ 24 Appellant further disputes the trial court's calculation of Appellee's monthly income. The record reflects that Appellee had a gross monthly income of $3,881.00.[3] *See* Appellee's Income and Expense Statement, filed 8/31/98.[4] However, the hearing officer engaged in an unspecified tax calculation to arrive at a monthly net income of $2,800. *See* Findings of Hearing Officer, filed 8/31/98, at 2.

■■■■ ¶ 25 To the extent that the hearing officer deducted Appellee's taxes in order to calculate his net monthly income,

---

3. Appellee testified at the hearing that this sum represented his net monthly income. N.T. Hearing, 8/31/98, at 47. However, this figure is inconsistent with the income and expense statement, which suggests that Appellee's gross income is $3,881.00. *See* Appellee's Income and Expense Statement, filed 8/31/98. The discrepancy was for the trial court to resolve. In doing so, the trial court evidently accepted the figures identified on the income and expense statement and determined that Appellee had mistakenly testified to the contrary.

4. The date of filing stamped on the exhibits and findings of the hearing officer is September 31, 1998. This date appears to be inaccurate as the hearing took place on August 31, 1998 and the month of September only has thirty days. We will therefore utilize the correct date in referencing the hearing officer's findings or the exhibits admitted at the hearing.

the adjustment was proper. *See* Pa.R.C.P. 1910.16–2(c)(1)(A) (providing that federal, state and local taxes shall be deducted from monthly gross income to arrive at net income). However, the record does not reveal the precise amount of taxes paid by Appellee. We are thus unable to ascertain whether the hearing officer's calculation is supported by the evidence of record. Because we are remanding for calculation of Appellee's spousal support obligation, we direct the trial judge to clarify this computation and indicate whether the hearing officer's adjustment was premised on the deduction of Appellee's taxes and if so, the amount of the taxes paid by Appellee. If necessary, the trial judge may receive additional evidence bearing on this issue.

¶ 26 In conjunction with her attack on the trial court's calculation of Appellee's net income, Appellant points to the fact that the parties lived an affluent lifestyle, owned a boat and that Appellee is dissipating assets as he has insufficient income to meet his monthly expenditures. Appellant's Brief at 11–12. We note that these claims were raised in Appellant's statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b) and are therefore preserved for review. Nevertheless, we find that there is nothing in the record which suggests that Appellee is deliberately dissipating assets in order to avoid his support obligations. If Appellant believes otherwise, nothing prohibits her from obtaining appropriate relief. However, this appeal is not the proper vehicle for obtaining such redress.

¶ 27 Appellant finally argues that the trial court erred in computing Appellant's own net monthly income. Specifically, Appellant asserts that she should not have been imputed a full-time earning capacity because she does not have a full-time job. Appellant's Brief at 12. Appellant testified at the hearing that she was seeking a full-time position that she hoped would provide her with an income of approximately ten to twelve dollars per hour. N.T. Hearing, 8/31/98, at 8 and 27. In addition, Appellant indicated that she had employment as a floral designer, a position that paid her $6.50 per hour. *Id.* at 7–8 and 27–28.

¶ 28 Based on Appellant's testimony, the hearing officer imputed a gross weekly income of approximately $400 to Appellant. *See* Findings of Hearing Officer, filed 8/31/98, at 2. Because the evidence of record fully supports the hearing officer's determination, error cannot be ascribed on this basis. Since we are remanding on other grounds, Appellant may supply the trial court with additional evidence regarding her income if her employment circumstances have significantly changed from the date of the hearing.

¶ 29 In sum, we find that the trial court abused its discretion in denying Appellant's request for spousal support. We accordingly vacate that portion of its order and remand for a calculation of the amount of spousal support to which Appellant is entitled. Upon remand, the trial court should consider any additional relevant evidence regarding the parties' respective incomes and must explain the manner in which the parties' net monthly incomes are calculated. While we make no determination regarding the amount of Appellee's child support obligation, should the trial court conclude that its previous order was premised on an erroneous calculation, the amount of child support should be modified accordingly.

¶ 30 Order vacated. Remanded for further proceedings. Jurisdiction relinquished.

¶ 31 CAVANAUGH, J., notes his dissent.